UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x
                              :

In re:                              : Chapter 11
                              :

HANS FUTTERMAN,                : Case No. 17-12899-mew
                   Debtor.     :

----------------------------------------------------------------------x
                              :

USHA SOHA TERRACE, LLC,       :
                              : Adv. Pro. No. 17-01220
                  Plaintiff,   :
                              :

RGS HOLDING, LLC, HANS FUTTERMAN,  :
SOHA TERRACE, LLC, 2280 FDB, LLC,    :
                              :
                 Defendants.  :

----------------------------------------------------------------------x
                              :

USHA SOHA TERRACE, LLC,       :
                              : Adv. Pro. No. 17-01221
                  Plaintiff,   :
                              :

RGS HOLDING, LLC, HANS FUTTERMAN,  :
SOHA TERRACE, LLC, 2280 FDB, LLC,    :
                              :
                 Defendants.  :

----------------------------------------------------------------------x

## DEBTOR HANS FUTTERMAN'S NOTICE OF MOTION FOR PARTIAL CONFIRMATION OF ARBITRATION AWARD AND APPOINTMENT OF AN INDEPENDENT MANAGER FOR 2280 FDB, LLC

     **PLEASE TAKE NOTICE** that upon the accompanying Declaration of Aaron M. Zeisler, dated January 9, 2018, with exhibits annexed thereto, Debtor's Supplemental Arguments Regarding Partial Confirmation of Arbitration Award and Appointment of an Independent Manager for 2280 FDB, LLC, and the pleadings and prior proceedings herein, debtor Hans Futterman, through his undersigned counsel, shall move this Court, at The United States Bankruptcy Court, One Bowling Green, New York, New York, 10004 on January 22, 2018, at 11:00 a.m. before the Honorable Michael E. Wiles, United States

Bankruptcy Judge at his Courtroom number 617 for an order:

1. appointing an independent manager to manage 2280 FDB, LLC so that its remaining units can be sold and a post-2013 accounting of its books can be performed;

2. confirming the award issued in *USHA SoHa Terrace LLC, et al. v. Hans Futterman, et al.*, AAA Case No. 13-20-1300-0729 (the "Award"), except as set forth in 3, below;

3. vacating that portion of the Award which that held that USHA (a 14% minority member) "shall elect new managing members" for both 2280 FDB, LLC and SoHa Terrace, LLC;

4. granting such other and further relief as the Court may deem appropriate.

**PLEASE TAKE FURTHER NOTICE** that USHA SoHa Terrace, LLC shall file and serve any opposition to the Motion on or before January 16, 2018 at 5:00 p.m. (EST), as per the Court's Order entered December 20, 2017 (Dkt. No. 45); and

Dated: New York, New York
     January 9, 2018

                              ZEISLER PLLC


                              By: _____/s/ Aaron M. Zeisler_____
                                   Aaron M. Zeisler
                                   Meghan H. Sullivan
                                   *Proposed Special Litigation Counsel*
                                   *for Debtor Hans Futterman*
                                   750 Third Avenue, 9th Floor
                                   New York, NY 10017
                                   Tel: (212) 671-1921

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HANS FUTTERMAN, | : | Case No. 17-12899-mew |
| Debtor. | : | |

------------------------------------------------------------------------x

| | | |
|---|---|---|
| USHA SOHA TERRACE, LLC, | : | |
| | : | Adv. Pro. No. 17-01220 |
| Plaintiff, | : | |
| | : | |
| RGS HOLDING, LLC, HANS FUTTERMAN, | : | |
| SOHA TERRACE, LLC, 2280 FDB, LLC, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------------------x

| | | |
|---|---|---|
| USHA SOHA TERRACE, LLC, | : | |
| | : | Adv. Pro. No. 17-01221 |
| Plaintiff, | : | |
| | : | |
| RGS HOLDING, LLC, HANS FUTTERMAN, | : | |
| SOHA TERRACE, LLC, 2280 FDB, LLC, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------------------x

**DEBTOR'S SUPPLEMENTAL ARGUMENTS REGARDING
PARTIAL CONFIRMATION OF ARBITRATION AWARD AND
APPOINTMENT OF AN INDEPENDENT MANAGER FOR 2280 FDB, LLC**

ZEISLER PLLC

Aaron M. Zeisler
Meghan H. Sullivan
750 Third Avenue, 9th Floor
New York, New York 10017
Tel: (212) 671-1921

*Proposed Special Litigation Counsel
for Debtor Hans Futterman*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND AND CASE HISTORY ............................................... 5

ARGUMENT ............................................................................................................ 11

POINT I.      THIS COURT SHOULD APPOINT AN INDEPENDENT MANAGER
              FOR 2280 FDB, LLC .................................................................... 11

      A.      The Debtor's Assets Must Be Protected for the Benefit of All Creditors ........... 11

      B.      Giving USHA, a Disputed Unsecured Creditor, Control Over 2280 FDB
              Would Be Detrimental to the Debtor's Estate and to its Other Legitimate
              Creditors .................................................................................... 12

      C.      USHA's Conduct Following The Award Demonstrates The Need For
              Court Intervention ......................................................................... 14

      D.      The Yellen Firm's Representation of 2280 FDB and SoHa Terrace in the
              July 2017 Action Creates a Non-Waivable Conflict for the Yellen Firm ............. 15

POINT II.     USHA AGREES THE ARBITRATION AWARD'S FINDINGS THAT
              DEBTOR AND RGS DID NOT CONVERT ASSETS, FALSIFY
              RECORDS, USURP OPPORUNITIES OR COMMIT OTHER
              WRONGFUL ACTS SHOULD BE CONFIRMED ........................... 16

POINT III.    THE ARBITRATION AWARD'S PURPORTED
              DISENFRANCHISEMENT OF RGS VIOLATES NEW YORK
              PUBLIC POLICY AND LLC STATUTE REGARDING THE
              VOTING RIGHTS OF LLC MEMBERS ....................................... 17

      A.      The Award's Direction That USHA Shall Elect New Managers For
              Both 2280 FDB and Its Parent SoHa Terrace Violates New York LLC
              Law § 402(a) ................................................................................ 18

      B.      New York LLC Law Is Well-Defined, Explicit and Clearly Applicable ............. 19

      C.      USHA Has No Right Under the Operating Agreements to Control SoHa
              Terrace and Appoint Itself As Manager of 2280 FDB ....................... 23

CONCLUSION.......................................................................................................... 24

## TABLE OF AUTHORITIES

**CASES**

*Adar 980 Realty, LLC v. Sofer,*
    No. 14-CV-3031, 2014 WL 3890110 (E.D.N.Y. Aug. 5, 2014)..............................12

*Caravousanos v. Kings County Hosp.,*
    27 Misc. 3d 237, 896 N.Y.S.2d 818 (N.Y. Sup. Ct. 2010) .....................................16

*City of Oswego v. Oswego City Firefighters Ass'n, Local 2707,*
    21 N.Y.3d 880 (N.Y. 2013) ............................................................................... 19, 22

*Consolidated Mortgages, LLC v. Westport Golf Investors, LLC,*
    52 Misc. 3d 1218(a), 43 N.Y.S.3d 766 (N.Y. Sup. Ct. 2015)....................................12

*Fakiris v. Gusmar Enters., LLC,*
    53 Misc. 3d 1215(A), 48 N.Y.S.3d 265 (N.Y. Sup. Ct. 2016)....................................22

*Gibber v. Colton,*
    140 A.D.3d 660, 33 N.Y.S.3d 719 (1st Dep't 2016) ...............................................21

*In re Bianchi (Katz),*
    111 A.D.3d 1012 (3d Dep't 2013) ........................................................................18

*In re Binghamton City Sch. Dist. (Peacock),*
    33 A.D.3d 1074, 823 N.Y.S. 2d 231 (3d Dep't 2006) ............................................18

*In re Bukowski (State Dep't of Corrections and Community Supervision),*
    148 A.D.3d 1386, 50 N.Y.S.3d 588 (3d Dep't 2017).........................................18, 19

*In re Livecchi,*
    2011 WL 668973 (Bankr. W.D.N.Y. Feb. 17, 2011) .............................................12

*In re Murray,*
    543 B.R. 484 (Bankr. S.D.N.Y. 2016)...................................................................11

*Janklowicz v. Landa,*
    41 Misc. 3d 1220(A), 981 N.Y.S.2d 636 (N.Y. Sup. Ct. 2013)................................22

*Manitaras v. Beusman,*
    56 A.D.3d 735, 868 N.Y.S.2d 121 (2d Dep't 2008)...............................................20

*Matter of Nat'l Cash Register Co. (Wilson),*
    8 N.Y.2d 377 (N.Y. 1960) ..................................................................................19

*Matter of Sprinzen (Nomberg),*
    46 N.Y.2d 623, 415 N.Y.S.2d 974 (N.Y. 1979) ....................................................... 19

*New York State Correctional Officers & Police Benev. Ass'n, Inc. v. State,*
    94 N.Y.2d 321 (N.Y. 1999) ............................................................................ 18

*Out of the Box Promotions, LLC v. Koschitzki,*
    15 Misc.3d 1134(A), 841 N.Y.S.2d 821 (N.Y. Sup. Ct. 2007)................................ 21

*Overhoff v. Scarp, Inc.,*
    812 N.Y.S.2d 809 (N.Y. Sup. Ct. 2005) ................................................................. 20

*Shapiro v. Ettenson,*
    146 A.D.3d 650, 45 N.Y.S.3d 439, 440 (1st Dep't 2017) ....................................... 20

*Spires v. Casterline,*
    4 Misc.3d 428, 778 N.Y.S.2d 259 (N.Y. Sup. Ct. 2004) ........................................ 20

*Tekni-Plex, Inc. v Meyner and Landis,*
    89 N.Y.2d 123, 674 N.E.2d 663, 651 N.Y.S.2d 954 ( N.Y. 1996) ......................... 16

*Villi v. O'Caining-Villi,*
    10 Misc.3d 1060(A) (N.Y. Sup. Ct. 2005)............................................................... 21

*Waxman Real Estate LLC v. Sacks,*
    32 Misc.3d 1241(A), 938 N.Y.S.2d 23 (N.Y. Sup. Ct. 2011).................................. 22


**STATUTES**

11 U.S.C.A. § 105 (West) ................................................................................................ 12

New York LLC Law § 402(a)................................................................................. 10, 18-22


**OTHER AUTHORITIES**

1994 Sess. Law News of N.Y. Ch. 576 (S. 7511-A, A. 11317-A) ............................... 19


**RULES**

CPLR section 7511 .......................................................................................................... 17

N.Y. Rules of Prof. Conduct (Jan. 2017), Rule 1.7(b)................................................... 15

**TREATISES**

3 *Ribstein & Keetinge, Limited Liability Companies* .................................................................. 24

5 White, *New York Business Entities* § L401.01 ........................................................................ 24

## PRELIMINARY STATEMENT

Disputed unsecured creditor USHA SoHa Terrace LLC ("USHA") is a nuisance litigant – having filed five spurious cases against Debtor Hans Futterman in five years – exploiting the court system in a misguided campaign to seize more than its share of a 14% minority investment in a condominium project, 2280 FDB LLC ("2280 FDB"). Futterman indirectly owns 80% of 2280 FDB, and his interest is his largest asset. USHA's attempt to co-opt 2280 FDB jeopardizes the recovery of Futterman's creditors and undermines this Court's ability to preserve the assets of the estate for the benefit of legitimate creditors.

USHA's opportunism dates to 2012, when it filed the first of two almost identical cases against Futterman and 2280 FDB alleging conversion and usurpation of assets by Futterman.[1] These claims were ordered to arbitration and were denied in a decision rendered on July 12, 2017 in *USHA SoHa Terrace LLC, et al. v. Hans Futterman, et al.*, AAA Case No. 13-20-1300-0729 (the "Award") (Zeisler Decl., Ex. A). Undeterred, at midnight on the day the Award was issued, USHA filed claims against Futterman purportedly on behalf of 2280 FDB in order to file several patently improper *lis pendens* against 2280 FDB *itself* (the "July 2017 Action") – an obvious attempt to stymie the 2280 FDB project further.[2] USHA and its counsel knew the *lis pendens* filings were improper for the additional reason that they had filed *lis pendens* against the property in a 2014 action on the same alleged grounds once before, which Justice Anil Singh vacated on May 14, 2015, ruling that USHA had no direct interest in 2280 FDB, but rather, only an interest in the parent LLC that owns 2280 FDB. *See* Tr. & Order at 25:26-29:25 (Zeisler Decl., Ex. B). The July 2017 Action was a particularly audacious power grab by USHA given

---

[1] These two state court cases, filed in 2012 and 2014 respectively, are now before this Court as Adversary Proceeding Nos. 17-01220 and 17-01221.

[2] This 2017 state court case was also removed to this Court. *See* Adv. Pro. No. 17-01222.

that no corporate action or court order authorized 2280 FDB's minority shareholder to purport to represent its interests, and its counsel has admitted that USHA is not the managing member. Moreover, USHA's counsel had a non-waivable conflict in its purported representation of 2280 FDB, having represented USHA in litigation *against* 2280 FDB on the very same day it filed suit *on behalf of* 2280 FDB.

In its crusade to transform its 14% interest into a controlling stake in 2280 FDB, USHA and its counsel have even sued Futterman's now-former attorneys, Robinson Brog Leinwand Greene Genovese & Gluck, P.C ("Robinson Brog"), on behalf of USHA and derivatively on behalf of 2280 FDB, claiming that the firm's representation of 2280 FDB was lacking and improper. The direct and derivative claims in that lawsuit were summarily rejected on motion to dismiss by the New York Supreme Court, which held, *inter alia*, that USHA failed to satisfy New York corporate law requirements of demand or futility in order to bring such claims – rejecting USHA's attempt to act on behalf of 2280 FDB. *See* Order at 4-5 (Zeisler Decl., Ex. C). Importantly, the Court ruled that USHA's allegations were conclusory and legally insufficient where it alleged that any demand on Futterman was futile because the entities were supposedly wholly dominated and controlled by Futterman. *Id.* at 5.

Undeterred by the Robinson Brog ruling, USHA filed another action on November 28, 2016 against Futterman, 2280 FDB and Ladera, LLC (the "November 2016 Action") – again, on behalf of itself and derivatively on behalf of 2280 FDB and SoHa Terrace – concerning his management of 2280 FDB and purported transfer of parking rights. Again, USHA conclusorily alleged that no demand had been made upon Futterman "because such demand would be utterly

2

futile" and that "Futterman exerts total domination and control over SoHa and 2280." Compl. ¶ 10 (Zeisler Decl., Ex. D).[3]

USHA has not gotten the message.  Here, once again, minority investor USHA continues its efforts to obtain more than it is owed by purporting to bring direct and derivative claims on behalf of itself and 2280 FDB, seeking unspecified claims that "are anticipated to include, but are not limited to, diversions of opportunity from, and assets from, the Claimant(s), in an amount that is impossible to determine at the present time."  *See* Proof of Claim 11-1, ¶ 2 (Zeisler Decl., Ex. E).

Accordingly, Futterman, by this motion, seeks two things from this Court.  First, Futterman seeks to partially confirm the Award in which the arbitrator found — contrary to USHA's laundry list of claims — that Futterman and his entity RGS Holdings, LLC ("RGS") had provided an accurate capital accounting regarding the parties' 2280 FDB project through December 31, 2013.  The Award also *denied* eight other of USHA's claims about RGS and its sole member Futterman:

> that RGS did not maintain proper books and records (denied); that it falsified books and records through December 31, 2013 (denied); that it did not faithfully cooperate with the audit (denied); that it converted a project opportunity (denied); that it made fraudulent misrepresentations in connection with refinancing (denied); that it was improperly paid brokerage commissions (denied); that it misrepresented the amount of its capital (denied); and that it improperly retained Next City Development (denied).

*See* Award at 26-27 (Zeisler Decl., Ex. A).

Second, Futterman seeks the Court's appointment of an independent manager for 2280 FDB, such as retired bankruptcy Judges Robert Gerber or Raymond Lyons, in order to: (a) sell

---

[3] Of course, this filing was made, contrary to the parties' operating agreements, after Futterman and RGS had demanded the issue be arbitrated.  Moreover, USHA has not prosecuted that New York action – instead, it leaked its complaint the next day (which was not then publicly available) to the RealDeal with the desired intent of publicly besmirching Futterman and tying up the 2280 FDB project further.

the remaining seven units (five residential and two commercial/common units) of 2280 FDB, and (b) engage accountants to perform a full accounting of the books of 2280 FDB to put to rest USHA's spurious claim that Futterman has converted assets of 2280 FDB after December 31, 2013. The appointment of an independent manager for 2280 FDB is necessary in order to preserve and protect Futterman's assets for the benefit the Debtor's estate and all valid and allowed creditors – not just the overly-litigious USHA. Moreover, such appointment is entirely warranted in light of Futterman's 80% indirect ownership of 2280 FDB, which gives Futterman (not USHA) the right to elect a new manager for 2280 FDB. While it is true, as USHA will raise, that the arbitrator found that Futterman and RGS should be removed as managers "[t]o prevent further self-dealing by Futterman" and be replaced "with some other entity not affiliated with Futterman" (see Award at 24), the parties' operating agreements and long-standing New York LLC Law entitle RGS to vote its 80% interest in 2280 FDB to elect an independent manager of 2280 FDB. To the extent that the Award provides that USHA (a 14% minority member) "shall elect new managing members" for both 2280 FDB and its controlling member, SoHa Terrace, the arbitrator grossly exceeded his authority and violated the majority voting rights of RGS (and thus Futterman) in clear contravention of New York public policy and the applicable operating agreements.

USHA, however, is already purporting to act as manager of 2280 FDB – even though the arbitration award has not been confirmed and its counsel has admitted it is not manager – as evidenced by USHA's filing of the July 2017 Action on behalf of 2280 FDB and its proof of claim on behalf of 2280 FDB. There can be no question that USHA's prior conduct is improper and wholly self-serving: USHA has repeatedly demonstrated its willingness to prioritize its own interests over those of 2280 FDB and all others involved in the project. Given USHA's well-

documented behavior, USHA's control over 2280 FDB would be profoundly detrimental to the Debtor's estate and to its other legitimate creditors.

For these reasons and those set forth herein, Debtor respectfully requests that the arbitration award be confirmed in part and vacated in part, and that an independent manager, such as Judge Gerber or Judge Lyons, be appointed as manager of 2280 FDB and oversee the orderly sale of its remaining assets.

## FACTUAL BACKGROUND AND CASE HISTORY

Debtor embarked on his plan to develop a residential condominium building at 2280 Frederick Douglass Boulevard in 2004 (the "Project"), taking steps to acquire the parcels of land and obtain the necessary construction permits.  *See* Award at 2 (Zeisler Decl., Ex. A).  In late 2005 or early 2006, Futterman approached USHA's principals as potential investors in the Project.  *Id.*  In connection with USHA's investment in the Project, USHA and Futterman – through his wholly-owned entity RGS – formed SoHa Terrace, LLC as the limited liability company that would own and develop the Project.  *Id.*  For its initial investment of $1.1 million, USHA received an 11% interest in SoHa Terrace.  *Id.*  Although USHA's interest was later increased to 14%, it is undisputed that RGS retained at least an 80% majority membership in SoHa Terrace at all times since its formation.[4]  *Id.* at 3, 26.

**The Managing Member SoHa Terrace**

SoHa Terrace's Operating Agreement (the "SoHa Operating Agreement") not only provides that the entity's managing member is RGS, but specifically requires Futterman's continuing control of RGS.  *See* SoHa Operating Agreement at §§ 1.32 (Zeisler Decl., Ex. F)

---

[4] As per the Award, Ameritrans Capital Corporation ("Ameritrans") held a 6% interest in SoHa Terrace.  However, as per USHA's proof of claim, apparently Ventures Soha LLC purchased that 6% interest.  *See* Claim 11-1, ¶ 5.

(defining Managing Member as RGS); § 11.9 ("Hans Futterman shall be required to remain as Managing Member of RGS [], which shall be the Managing Member of the Company").  The SoHa Operating Agreement also expressly provides that the managing member's authority is exclusive – SoHa's members do not have the right to participate in the management of the company by virtue of their membership interest.  *See id.* §§ 6.1, 1.31 ("No Member other than the Managing Member shall have authority as a Member to bind the Company or any [right to participate in the management of the Company, to vote on any matter and to grant or withhold consent or approval of actions of the Company] . . ..").  Pursuant to the SoHa Operating Agreement, RGS was to be the managing member of SoHa Terrace in perpetuity – RGS "shall not have a right to resign" and "may not be removed by the Members for any reason other than a breach of [RGS's] standard of care," defined as "refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, fraud or a knowing violation of law."  *Id.* §§ 7.6, 7.7. For this reason, the SoHa Operating Agreement does not include voting provisions for the election of the managing member.  It does, however, specifically acknowledge that New York's LLC Law controls the agreement's provisions: "If the operation of any provision of this Company Agreement would contravene the provisions of the NY LLC Law, such provisions shall be void and ineffectual."  *Id.* § 14.6.

**2280 FDB and Its Operating Agreement**

As the parties had anticipated when USHA made its investment, the next phases of the Project necessitated engaging other investors.  Award at 3 (Zeisler Decl. Ex. A).  Pursuant to the financing agreements reached by SoHa Terrace's members, a new entity called 2280 FDB, LLC ("2280 FDB") was formed in 2006 to own and develop the Project.  *Id.* at 4.  When the original majority member of 2280 FDB expressed an interest in having its interest redeemed in or about 2012, USHA consented to the redemption and refinancing.  *Id.* at 9.  As a result of this

redemption and refinancing, SoHa Terrace became the 99.5% owner of 2280 FDB, and a newly-formed entity called SoHa Terrace Management Corp. ("STMC") became a 0.5% owner and the managing member of 2280 FDB. *Id.* Futterman controls SoHa Managing Owner LLC ("SMO"), the owner of STMC, and therefore ultimately controls STMC. *Id.* The organization chart below depicts in relevant part the ownership of 2280 FDB. (The underlined entities in gray boxes are controlled by Debtor Futterman).



The Limited Liability Company Operating Agreement of 2280 FDB, as amended and restated on March 28, 2012 (the "2280 FDB Operating Agreement") provided that SoHa Terrace Manager Corp. or "STMC" (defined as "SoHa Manager" in the operating agreement) would be the manager, and that there would be a vote by Class A units to replace the manager. *See* 2280 FDB Operating Agreement at Section 3.1(c), 8.1 & 8.3 (Zeisler Decl., Ex. G). Importantly, 2280 FDB is a manager-managed entity, and "Manager" under the 2280 FDB Operating Agreement "means SoHa Manager and *any replacement appointed in accordance with the agreement*." *Id.*, Art. II

(emphasis added) & § 3.1(a) ("the business and affairs of the Company shall be managed by or under the direction of the Manager.").[5]

**USHA Files Claims Against Futterman, 2280 FDB and SoHa Terrace**

At some point following the reorganization of 2280 FDB, USHA became disillusioned with the development of the Project and, on or about April 9, 2013, filed a demand for arbitration with the American Arbitration Association against RGS, Futterman, 2280 FDB, and SoHa Terrace[6], as required by the 2280 FDB Operating Agreement's dispute resolution provisions. *See id.*, § 12.7. USHA asserted a hodgepodge of claims including a failure to maintain proper books and records, conversion of project opportunities, and misrepresentation of capital contributions to the Project. *See* Award at 15-21 (Zeisler Decl., Ex. A). In connection with the Arbitration, the parties engaged in an extensive discovery process, which made evident that the vast majority of USHA's claims were factually unsupported, and the Award denied those claims.

Moreover, USHA filed a 2014 action in an effort to circumvent the Arbitration, claiming that Defendants had frustrated the arbitration process by withholding certain documents (an assertion that was ultimately rejected in the Award). Defendants responded by moving to compel USHA to return to the arbitration process that was underway. By Order dated May 14, 2015, Justice Anil C. Singh granted Defendants' motion pursuant to CPLR § 7503(a) to compel arbitration and issued a stay of the litigation. Zeisler Decl., Ex. B. Significantly, Justice Singh made clear that all claims should be brought in arbitration, and that "either party may make an

---

[5] Also, STMC is the managing member of 2280 FDB, and none of the acts purporting to justify removal of RGS from SoHa Terrace would justify removal of STMC as managing member for 2280 FDB.

[6] USHA also named Ameritrans, the third member of SoHa Terrace, as a defendant in the Arbitration.

application by order to show cause to vacate or modify this stay upon the final determination of the arbitration." *Id.*

**The Arbitration**

The arbitration hearings took place between December 15, 2015 and June 16, 2016. *See* Award at 3 (Zeisler Decl. Ex. A). On or about July 25, 2016, all parties to this lawsuit stipulated that the arbitrator's determination would be binding. *Id.* The Award, which was issued on July 12, 2017, rejected the virtually all of USHA's claims against RGS and Futterman. *Id.* at 26-27. The arbitrator found that Futterman and his entity RGS had provided an accurate capital accounting regarding the parties' 2280 FDB project through December 31, 2013, and the arbitrator *denied* eight other of USHA's claims about RGS and its sole member Futterman:

> that RGS did not maintain proper books and records (denied); that it falsified books and records through December 31, 2013 (denied); that it did not faithfully cooperate with the audit (denied); that it converted a project opportunity (denied); that it made fraudulent misrepresentations in connection with refinancing (denied); that it was improperly paid brokerage commissions (denied); that it misrepresented the amount of its capital (denied); and that it improperly retained Next City Development (denied).

*Id.*

However, the Award states Futterman had engaged in self-dealing in his entities' role as managing members of SoHa Terrace and 2280 FDB, and that this misconduct "justifies his removal" as managing member. *Id.* at 24. Accordingly, the Award stated "RGS Holdings, LLC and Hans Futterman, as well as their affiliates . . . are herein and hereby removed from all management or control over SoHa Terrace, LLC and 2280 FDB LLC . . . ." *Id.* at 26.[7]

---

[7] Futterman vehemently disagrees with the arbitrator's removal of RGS based upon the assertion (i) that slow-selling units was tantamount to self-dealing (especially given that sales are driven by market conditions and that USHA has blocked sales of the units), and (ii) that booking a small amount of liabilities to 2280 FDB during the pendency of a dispute and then transferring those liabilities to RGS upon final determination of that dispute was improper.

Erroneously, however, the Award goes on to order that USHA "shall elect new managing members for SoHa Terrace, LLC and 2280 FDB, LLC." *Id.* at 26. In other words, the Award purports to order SoHa Terrace's minority member to "elect" a replacement managing member, notwithstanding the Award's explicit recognition that "RGS Holdings, LLC is the owner of 80% of the membership interest in SoHa Terrace, LLC," and that USHA "is the owner of 14% of the membership interest in SoHa Terrace, LLC." *Id.* at 26.

**USHA's Midnight Filing on Behalf of 2280 FDB on the Day the Award Was Rendered**

USHA wasted no time in attempting to capitalize on the arbitrator's error. At midnight on the eve the Award was issued, USHA decided to unilaterally act as new managing members for both LLCs[8] – without holding elections – by hiring the Yellen firm (USHA's counsel) as counsel for 2280 FDB and SoHa Terrace, and by filing a lawsuit with both 2280 FDB and SoHa Terrace as plaintiffs. *See* Adv. Pro. No. 17-01222, Summons & Compl., Dkt. 1-2 (Zeisler Decl., Ex. H). Indeed, the Yellen firm (which litigated 2012 and 2014 cases as well as the arbitration *against* 2280 FDB and SoHa Terrace) proceeded to bring this unauthorized lawsuit *on behalf of* 2280 FDB and SoHa Terrace, asserting that "only [the minority members of SoHa Terrace] may further act, on behalf of Plaintiffs, to conduct the affairs thereof." Of course, nothing in the entities' operating agreements authorizes such an outcome, and New York LLC Law simply does not permit a minority member to effect a company coup in this manner.

---

[8] New York LLC Law § 402(a) and SoHa Terrace's Operating Agreement require a vote by ownership interests, and any control over 2280 FDB must still be exercised in accordance with its operating agreement, which requires a Manager to be appointed by Class A vote. *See* 2280 FDB Operating Agreement, §§ 3.1(c), 8.1 & 8.3 (Zeisler Decl., Ex. G).

## ARGUMENT

### I.    THIS COURT SHOULD APPOINT AN INDEPENDENT MANAGER FOR 2280 FDB, LLC

In order to protect Debtor's largest remaining asset for the benefit of Debtor's estate and all legitimate and allowed creditors, and to protect the estate against disputed, unsecured creditor USHA's extortionate and iterative litigation tactics, this Court should exercise its inherent authority to appoint an independent Manager of 2280 FDB, such as Judge Gerber or Judge Lyons. This appointment is also Debtor's right under the entities' operating agreements and well-settled New York LLC law (*see* Point III, *infra*), but the need to protect the largest asset in the estate from a disputed, unsecured creditor is an independent ground for the relief Debtor seeks.

### A.    The Debtor's Assets Must Be Protected for the Benefit of All Creditors

"Bankruptcy is a collective remedy, with the original purpose – which continues to this day – to address the needs and concerns of creditors with competing demands to debtor's limited assets, and with the understandable desire that the debtor's assets not go to the swiftest, or the most aggressive of them." *In re Murray*, 543 B.R. 484, 495 (Bankr. S.D.N.Y. 2016). As courts in this district have consistently recognized, bankruptcy functions "to preserve the assets of the debtor for the benefit of all creditors and protect the creditors from each other by stopping the race to seize the debtor's assets." *In re Cabrini Med. Ctr.*, 489 B.R. 7, 23 (Bankr. S.D.N.Y. 2012); *see also In re Rubin*, 160 B.R. 269, 281 (Bankr. S.D.N.Y. 1993) ("The guiding premise of the Bankruptcy Code is the equality of distribution of assets among creditors."). Here, the appointment of an independent manager for 2280 FDB will prevent one disputed and conflicted unsecured creditor from seizing control over the largest asset in the estate, and is therefore in the best interest of the Debtor, its creditors and the estate as a whole.

There can be no question the appointment of an independent manager for 2280 FDB is within this Court's authority. *See, e.g.,* 11 U.S.C.A. § 105 (West) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). Indeed, a number of courts have appointed independent managers for the preservation of a debtor's assets. *See, e.g.*, *Consolidated Mortgages, LLC v. Westport Golf Investors, LLC*, 52 Misc.3d 1218(a), 43 N.Y.S.3d 766(Table) (N.Y. Sup. Ct. 2015) ("By Order dated September 2, 2015, with Plaintiff's consent, the Court granted the receiver's request to appoint a property manager to oversee operations of the golf course."); *In re Livecchi*, 2011 WL 668973, at *3 (Bankr. W.D.N.Y. Feb. 17, 2011) ("The Court granted the motions to appoint the [p]roperty [m]anager and [b]roker, . . . after [] it found those entities to be experienced and qualified"); *see also Adar 980 Realty, LLC v. Sofer*, No. 14-CV-3031, 2014 WL 3890110, at *5 (E.D.N.Y. Aug. 5, 2014) ("[T]he purpose of the [property's] operation by someone other than [debtor] was . . . to protect the assets of the estate from being converted [], a benefit which would accrue to all creditors equally.").

**B.**  **Giving USHA, a Disputed Unsecured Creditor, Control Over 2280 FDB Would Be Detrimental to the Debtor's Estate and to its Other Legitimate Creditors**

Such an independent manager is particularly appropriate here, where USHA has repeatedly demonstrated its willingness to act to the detriment of 2280 FDB to serve its own interests. Allowing USHA to take the reins of the largest asset in Debtor's estate would effectively enable a disputed, unsecured creditor with only speculative claims (and holding a mere 14% interest) to prioritize its own recovery at the expense of other creditors and the Debtor's estate as a whole.

Among other improper or self-interested actions that have harmed 2280 FDB, USHA:

1.  Has filed improper *lis pendens* against 2280 FDB on at least two occasions.  At midnight on the day the Award was issued, USHA filed claims against Futterman purportedly on behalf of 2280 FDB in the July 2017 Action in order to file several patently improper *lis pendens* against 2280 FDB *itself* (the "July 2017 Action") – an obvious attempt to stymie the 2280 FDB project. USHA and its counsel knew the *lis pendens* filings were improper given that they had previously filed *lis pendens* against the property in 2014 action on the same alleged grounds, which Justice Anil Singh vacated on May 14, 2015, ruling that USHA had no direct interest in 2280 FDB, but rather, only an interest in the parent LLC that owns 2280 FDB.  *See* Tr. & Order at 25:26-29:25 (Zeisler Decl., Ex. B).

2.  Has blocked sales of the remaining 2280 FDB units.  Indeed, Futterman sought consent from USHA to hire a new broker that would sell units as recently as October 2017, and USHA refused, which is stunning given that USHA argued during the arbitration that Futterman was "self-dealing" and not acting in the minority's interest because he was not selling units quickly enough.  *See* Award at 22-23.

3.  Has filed five litigations against Futterman and 2280 FDB (some of which USHA has strategically leaked to the press or other creditors, but has not prosecuted), such as the November 2016 Action and the July 2017 Action.

4.  Has refused to arbitrate claims it must arbitrate in an attempt to continue litigation against Futterman and 2280 FDB.  For instance, USHA alleged that Futterman improperly transferred parking rights owned by 2280 FDB, but when Futterman demanded arbitration with USHA, USHA refused.  Zeisler Decl., Ex. D.  Yet, after refusing to arbitrate as required by the parties' operating agreements – though duly demanded – USHA filed the November 2016 Action.  *See id.* & Exhs. I & J.

Based upon its well-documented tactics, giving USHA control over 2280 FDB would be detrimental to the Debtor's estate and to its legitimate creditors.

### C.    USHA's Conduct Following The Award Demonstrates The Need For Court Intervention

USHA's reaction to the Award demonstrates that the ruling raises issues that are more than merely academic.  Again, on the day the Award was issued, USHA took steps to co-opt control of SoHa Terrace, concluding that its purported authority to "elect" a new managing member entitled it to step into the shoes of the LLC's majority owner as Manager immediately, without notice or holding an election.  Specifically, at midnight on July 13, 2017 (the eve the Award was issued), USHA filed a separate lawsuit in New York Supreme Court supposedly on behalf of 2280 FDB, LLC and SoHa Terrace, LLC.  *See* Zeisler Decl., Ex. H.   USHA purported to act for 2280 FDB and SoHa Terrace notwithstanding the reality that (1) there obviously had been no "election" of a new managing member of these entities; and (2) the same law firm, Richard I. Yellen & Associates, LLP ("Yellen"), that represented USHA *against* 2280 FDB and SoHa Terrace in the arbitration, in this Action and in a separate 2014 action, now purported to *represent* 2280 FDB and SoHa Terrace before this Court.  Indeed, the Yellen firm admitted that Futterman's entity RGS is *still currently* the managing member of SoHa Terrace, and that entities that Futterman/RGS control are manager of 2280 FDB.  *See* Zeisler Decl., Ex. K.

Yet, in its "Verified Complaint" in the 2017 Action, USHA's attorneys allege that "only [USHA] and/or Ameritrans Capittal [*sic*] Corp., the other members of SoHa Terrace, LLC may further act, on behalf of [2280 FDB, LLC and SoHa Terrace], to conduct the affairs thereof." *Id.*, Ex. H, ¶ 6.  This blatant power grab throws into stark relief the ramifications of the Award's suggestion that an LLC's majority member's interest could be somehow subordinated to that of

14

the minority member – put simply, it turns New York LLC Law on its head, as addressed in Point III, below.

### D. The Yellen Firm's Representation of 2280 FDB and SoHa Terrace in the July 2017 Action Creates a Non-Waivable Conflict for the Yellen Firm

The difficulties inherent in the Award's purported subordination of the rights held by 2280 FDB and SoHa Terrace's majority shareholders are compounded by Yellen's attempt to take a dual role in these proceedings. Because Yellen litigated USHA's claims *against* 2280 FDB and SoHa Terrace in at least three separate proceedings, it cannot now bring a lawsuit *on behalf of* 2280 FDB and SoHa Terrace. *Compare* the July 2017 Action (Zeisler Decl., Ex. H) *to* the 2012 and 2014 actions, and the Award (Zeisler Decl., Exhs. A, L & M).

Yellen undoubtedly recognizes the conflict: during the arbitration, Yellen demanded that 2280 FDB and SoHa Terrace be represented by attorneys other than those representing Futterman and RGS, claiming that the "clear and acknowledged conflict of interest" required those entities to retain "independent counsel." *See* Kombol Affirmation in Reply ¶¶ 3, 7 (Zeisler Decl. Ex. N). In light of their concern, 2280 FDB and SoHa Terrace obtained new counsel for the arbitration, Charles E. Boulbol, P.C.

It is well-settled that Yellen cannot represent USHA against 2280 FDB, SoHa Terrace, RGS and Futterman in this action and the 2014 Action, yet represent 2280 FDB and SoHa as plaintiffs in the 2017 Action. In relevant part, the New York Rules of Professional Conduct, Rule 1.7(b), provides:

> "Notwithstanding the existence of a concurrent conflict of interest under paragraph (a) [which prohibits a lawyer from representing differing interests], a lawyer may represent a client if: … (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer *in the same litigation or other proceeding* before a tribunal;"

N.Y. Rules of Prof. Conduct (Jan. 2017), Rule 1.7(b) (emphasis added).

15

Moreover, this conflict is non-waivable.  The official comment to Rule 1.7(b)(3) states that "Paragraph (b)(3) describes conflicts that are nonconsentable because of the institutional interest in vigorous development of each client's position when the clients are aligned directly against each other in the same litigation or other proceeding before a tribunal." *Id.*, cmt. 17; *see also id. cmt. 23* ("Paragraph (b)(3) prohibits representation of opposing parties in the same litigation, regardless of the clients' consent.").[9]

Here, Yellen's willingness to skirt these clear and unambiguous rules further demonstrates the need for an election of an independent manager for 2280 FDB and SoHa Terrace in accordance with New York law and the spirit of the Award.  Absent this relief, USHA will continue to treat its minority membership in 2280 FDB and SoHa Terrace as though it is a controlling interest in both entities – effectively eviscerating the majority stake recognized by the Award and the majority rights universally recognized by New York LLC Law and the courts interpreting it.

## II.    USHA AGREES THE ARBITRATION AWARD'S FINDINGS THAT DEBTOR AND RGS DID NOT CONVERT ASSETS, FALSIFY RECORDS, USURP OPPORUNITIES OR COMMIT OTHER WRONGFUL ACTS SHOULD BE CONFIRMED

USHA moved the New York Supreme Court to confirm the Award in its entirety, including the arbitrator's findings that Debtor and RGS did not commit the wrongful acts alleged

---

[9] Yellen's actions may even be grounds for disqualification, especially if the firm persists in representing 2280 FDB and SoHa Terrace or taking actions on its behalf.  *See, e.g., Tekni-Plex, Inc. v Meyner and Landis*, 89 N.Y.2d 123, 134, 674 N.E.2d 663, 669, 651 N.Y.S.2d 954, 960 (1996) (attorney disqualification upheld where the business operations of the company continued under new managers because the attorney-client relationship is deemed to continue for purposes of conflict analysis); *Caravousanos v. Kings County Hosp.*, 27 Misc. 3d 237, 242, 896 N.Y.S.2d 818, 822-23 (Sup. Ct. 2010) ("The simultaneous representation of AWL and Nova in an adverse capacity was a violation of § 1200.7 [Rule 1.7] of the Rules of Professional Conduct.").  The conflict here is apparent given that Yellen presently seeks to confirm the arbitration Award against respondents 2280 FDB and SoHa Terrace, its own clients in the July 2017 Action (Zeisler Decl., Ex. H).

by USHA.  Specifically, the Award rejected the vast majority of USHA's claims against RGS

and Futterman.  Award at 26-27 (Zeisler Decl, Ex. A).  The arbitrator found that Futterman and

his entity RGS had provided an accurate capital accounting regarding the parties' 2280 FDB

project as of December 31, 2013, and the arbitrator *denied* eight other of USHA's claims about

RGS and its sole member Futterman:

- that RGS did not maintain proper books and records (denied);

- that it falsified books and records through December 31, 2013 (denied);

- that it did not faithfully cooperate with the audit (denied);

- that it converted a project opportunity (denied);

- that it made fraudulent misrepresentations in connection with refinancing (denied);

- that it was improperly paid brokerage commissions (denied);

- that it misrepresented the amount of its capital (denied); and

- that it improperly retained Next City Development (denied).

*Id.*  Given that Debtor also agrees with the above-cited findings, that portion of the Award should

be confirmed.

### III.    THE ARBITRATION AWARD'S PURPORTED DISENFRANCHISEMENT OF RGS VIOLATES NEW YORK PUBLIC POLICY AND STATUTE REGARDING THE VOTING RIGHTS OF LLC MEMBERS

Under CPLR section 7511(b)(1), an arbitration award "shall be vacated on the application

of a party . . . if the court finds that an arbitrator . . . exceeded his power or so imperfectly

executed it that a final and definite award upon the subject matter submitted was not made . . . ."

CPLR § 7511(b)(1)(iii).[10]  "[A] court may vacate an arbitral award where strong and well-

_____

[10]    The Award was issued on July 12, 2017 and modified on August 22, 2017.  The parties' time to move to confirm or vacate the Award runs from the date of modification.  *See,*

defined policy considerations embodied in constitutional, statutory or common law prohibit . . . certain relief from being granted by an arbitrator." *New York State Correctional Officers & Police Benev. Ass'n, Inc. v. State*, 94 N.Y.2d 321, 326 (1999). In determining whether the Award violates New York's public policy, this Court "must focus on the actual result of the arbitration process" and vacate where, "on its face and because of its reach, [it] violates an explicit law of this [s]tate." *In re Bukowski (State Dep't of Corrections and Community Supervision)*, 148 A.D.3d 1386, 1388, 50 N.Y.S.3d 588 (3d Dep't 2017) (vacating award in part). "Courts shed their cloak of noninterference where specific terms of the arbitration agreement violate a defined and discernible public policy; where an arbitrator exceeds his or her legal authority; or where the final result creates an explicit conflict with other laws and their attendant policy concerns." *New York State Correctional Officers*, 94 N.Y.2d at 326; *see also In re Binghamton City Sch. Dist. (Peacock)*, 33 A.D.3d 1074, 823 N.Y.S. 2d 231 (3d Dep't 2006) (vacating award as violating "explicit and compelling public policy to protect children from the harmful conduct of adults").

### A.    The Award's Direction That USHA Shall Elect New Managers For Both 2280 FDB and Its Parent SoHa Terrace Violates New York LLC Law § 402(a)

Here, the Award's effective evisceration of an LLC member's majority voting rights unquestionably contravenes the public policy set forth in New York LLC Law section 402(a), which requires that, "in managing the affairs of the limited liability company, [or] electing managers . . . each member of a limited liability company ***shall*** vote in proportion to such member's share of the current profits of the limited liability company." NY LLC LAW § 402(a). By directing USHA, a minority member of an LLC, to "elect" a managing member, the Award

---

*e.g., In re Bianchi (Katz)*, 111 A.D.3d 1012, 1013 (3d Dep't 2013) (period in which to move to challenge award runs from the date of the arbitrator's decision on the request for modification). However, Debtor's and RGS's initial motion was timely using either date.

18

created exactly the "explicit conflict" with section 402(a) that warrants this Court's intervention. Indeed, to hold otherwise would effectively gut the LLC member protections afforded by New York LLC law. *See In re Bukowski*, 148 A.D.3d at 1389 ("[T]o construe the [public policy] exception so narrowly as to exclude cases that fall wholly within the strict judicial standards that have been established for its application would be, in effect, to declare that there is no such exception at all.").

Critically, this Court can reach this conclusion "without engaging in extended factfinding or legal analysis." *Matter of Sprinzen (Nomberg)*, 46 N.Y.2d 623, 631, 415 N.Y.S.2d 974 (1979). Indeed, the Award itself recognizes that RGS "is the owner of 80% of the membership interest in SoHa Terrace, LLC." *See* Award at 26 (Zeisler Decl. Ex. A). By recognizing RGS's majority stake, and then simultaneously denying RGS the rights concomitant with its majority ownership under New York LLC law, the Award turns NY LLC law on its head and effectively rewrites SoHa Terrace's Operating Agreement to put its minority owner in charge. *See, e.g. City of Oswego v. Oswego City Firefighters Ass'n, Local 2707*, 21 N.Y.3d 880, 882 (2013) (vacating award that enabled petitioner to take action "that is no longer authorized by law and, in the circumstances . . . creates an explicit conflict with other laws"); *Matter of Nat'l Cash Register Co. (Wilson)*, 8 N.Y.2d 377, 383 (1960) (noting that arbitrators exceeded their powers "if they gave a completely irrational construction to the provisions in dispute and, in effect, made a new contract for the parties").

## B.    New York LLC Law Is Well-Defined, Explicit and Clearly Applicable

The LLC law was adopted by the New York legislature in 1994. *See* 1994 Sess. Law News of N.Y. Ch. 576 (S. 7511-A, A. 11317-A). As courts have consistently held since the statute's enactment, the LLC Law provides the default provisions that govern LLC conduct in the absence of a contrary provision in an LLC's operating agreement. *See Overhoff v. Scarp,*

*Inc.*, 812 N.Y.S.2d 809, 816 (Sup. Ct. 2005) ("[T]he statute provided default procedures for LLCs, which will apply to LLC proceedings unless the operating agreement of the particular LLC clearly provides otherwise."); *Shapiro v. Ettenson*, 146 A.D.3d 650, 45 N.Y.S.3d 439, 440 (1st Dep't 2017) ("[W]here . . . the operating agreement fails to address issues in dispute, the default provisions under the Limited Liability Company Law govern"); *Manitaras v. Beusman*, 56 A.D.3d 735, 868 N.Y.S.2d 121 (2d Dep't 2008) ("[T]he operating agreement of [the LLC] is silent on the issue of the sale of the company's sole asset. Therefore, the default provisions of the Limited Liability Company law apply.").

Here, the SoHa Terrace Operating Agreement does not include provisions governing votes on managing members – namely because the agreement expressly envisions that RGS and STMC would act as managing members in perpetuity, absent grossly negligent or reckless conduct, intentional misconduct, fraud or a knowing violation of law. *See* SoHa Terrace Operating Agreement (Zeisler Decl., Ex. F) at §§ 1.32 (defining Managing Member as RGS), 7.6 (standard of care) & 7.7 (noting that RGS "shall not have a right to resign" and "may not be removed by the Members for any reason other than a breach of [RGS's] standard of care").

In the absence of express voting provisions in the SoHa Terrace Operating Agreement, New York LLC Law section 402(a) controls how managing members must be elected. As the court explained in *Spires v. Casterline*, 4 Misc.3d 428, 778 N.Y.S.2d 259 (Sup. Ct. 2004), when an operating agreement

> does not address certain subjects, then the entity is bound by the minimum requirements set forth in the Limited Liability Company Law. In this situation, the entity is required to operate according to the statutory provisions. These statutory default provisions of the Limited Liability Company Law become the 'Operating Agreement' of the limited liability company.

*Id.* There can be no question that this principle applies with equal force to the rights of LLC members to elect managers in proportion to their membership interests. *See, e.g.*, *Out of the Box*

20

*Promotions, LLC v. Koschitzki*, 15 Misc.3d 1134(A), 841 N.Y.S.2d 821 (Sup. Ct. 2007) ("Applying the default provisions of LLCL § 402, members vote in proportion to their respective interests.").

Recognizing the strong public policy of protecting LLC members' rights, New York courts routinely hold that acts taken without the vote of all members entitled to participate are void. *See Gibber v. Colton*, 140 A.D.3d 660, 33 N.Y.S.3d 719 (1st Dep't 2016) (affirming order declaring that plaintiff remains a co-manager of LLC, on grounds that "plaintiff, who holds a 50% member interest in the company, was not included in the March 2012 vote to remove her as co-managing member"); *Villi v. O'Caining-Villi*, 10 Misc.3d 1060(A) (Sup. Ct. 2005) (noting that in order to show that LLC's conduct was authorized, "plaintiff would have to prove that the requisite meeting and voting was conducted, and that a majority vote supported" the conduct, and concluding that the "lack of proof is fatal to plaintiff's application").

For this reason, the Award's ruling that USHA "shall elect new managing members for SoHa Terrace LLC and 2280 FDB LLC" clearly and unmistakably violates New York LLC Law section 402(a). Nothing in New York's LLC law or the LLCs' operating agreements permits a minority member to unilaterally and singlehandedly "elect" a managing member; indeed, even if the law somehow condoned the sweeping abrogation of a majority member's rights, the notion of a one-voter "election" is inherently contradictory. Even USHA recognized this principal given that its operative Statement of Claim in the underlying arbitration merely demanded that the managing member, SoHa Terrace, be removed and "replaced with a new party to be elected by Developer's remaining members." *See* USHA's Third Am. Statement of Claim in Arbitration, ¶ 78 (Zeisler Decl., Ex. O). Thus, RGS would get a vote in any election of a new, non-RGS affiliated member. RGS is and at all times has been a Member – its removal as Manager does not denude or otherwise extinguish its status as a Member.

In addition, it is worth noting that New York courts have cast doubt on a tribunal's ability to remove a manager absent a vote of the majority in interest. These rulings underscore the strong public policy of protecting LLC members' rights to elect managers in accordance with section 402(a). *See, e.g.*, *Fakiris v. Gusmar Enters., LLC*, 53 Misc.3d 1215(A), 48 N.Y.S.3d 265 (Sup. Ct. 2016) ("[Plaintiff] seeks a judgment removing defendant Kostas as a managing member of Gusmar. . . . [P]laintiff cites no authority in support of the proposition that the court has the authority to remove a managing member of a limited liability company."); *Janklowicz v. Landa*, 41 Misc.3d 1220(A), 981 N.Y.S.2d 636 (Sup. Ct. 2013) ("Unless there is a vote of a majority in interest of the members, this court is unaware of a legal basis for directing, ordering or adjudging that an LLC member be removed from a management position."); *Waxman Real Estate LLC v. Sacks*, 32 Misc.3d 1241(A), 938 N.Y.S.2d 23 (Sup. Ct. 2011) ("[W]here there has been no vote or meeting called by Members to remove [the] Manager of the Company, [NY LLC Law] section 414 does not authorize a court to remove an LLC Manager.").

Notwithstanding this case law, and while RGS and Futterman disagree with the arbitrator's findings that there was cause to remove them, RGS and Futterman do not seek to vacate that portion of the Award requiring the replacement of RGS and Futterman's affiliates as the LLCs' managing members. Indeed, if the Award had correctly provided that the members of SoHa Terrace (and, by extension, 2280 FDB) must hold elections in accordance with New York LLC law to name a neutral, third-party replacement manager for 2280 FDB, not to be affiliated with Futterman in any way, RGS and Futterman would have sought confirmation of the Award in its entirety. However, an Award that purports to strip an LLC's majority member of the ability to elect managers in proportion to its membership interest so clearly violates well-established New York LLC Law section 402(a), that it creates the "explicit conflict" that warrants this Court's correction. *See City of Oswego*, 21 N.Y.3d at 882.

C.    **USHA Has No Right Under the Operating Agreements to Control SoHa Terrace and Appoint Itself As Manager of 2280 FDB**

Contrary to USHA's improper filing of the July 2017 Action (stating that it has the sole authority to act on behalf of two LLCs in which it holds a minority interest), neither the Award, nor the relevant operating agreements, nor New York LLC law, grant it any such authority.

First, as set forth above, the Award merely directs USHA to "elect" replacement managing members – a ruling that, for the reasons stated in Point III.A & B, *supra*, clearly violates New York LLC Law.  Futterman should be able to vote RGS's 80% interest in SoHa Terrace in order to vote for a new managing member of SoHa Terrace and an Independent Manager for 2280 FDB.

Second, the 2280 FDB Operating Agreement provides that SoHa Terrace Manager Corp. or "STMC" (defined as "SoHa Manager" in the operating agreement) would be the manager, and that there would be a vote by Class A units to replace the manager.  *See* 2280 FDB Operating Agreement at Section 3.1(c), 8.1 & 8.3 (Zeisler Decl., Ex. G).  USHA holds no Class A units – only SoHa Terrace does.  Thus, Futterman's 80% vote at the SoHa Terrace level controls the appointment of any replacement manager for 2280 FDB, the actual holder of the condominium assets.

Third, 2280 FDB is a manager-managed entity, and "Manager" under the 2280 FDB Operating Agreement "means SoHa Manager and *any replacement appointed in accordance with the agreement*." *Id.*, Art. II (emphasis added) & § 3.1(a) ("the business and affairs of the Company shall be managed by or under the direction of the Manager.").  There is no authority under the 2280 FDB Operating Agreement for USHA to elect itself as Independent Manager, and indeed, the definition of Independent Manager would preclude USHA from serving.  *Id.,* Art. II (Independent Manager definition).

23

Finally, it is clear that the manager-managed provision of the 2280 FDB Operating Agreement tracks textbook LLC law. *See* 3 *Ribstein & Keetinge, Limited Liability Companies,* Appendix B–8, fn.1 ("[I]n a member-managed LLC, each member is an agent of the LLC for carrying on the business of the LLC in the usual course. On the other hand, in a manager-managed LLC, members do not have agency authority and managers do."); 5 White, *New York Business Entities* § L401.01 (same).

<u>CONCLUSION</u>

For these reasons, Debtor respectfully requests the arbitration award be confirmed in part and vacated in part, and that an independent manager, such as Judge Gerber or Judge Lyons, be appointed to manage 2280 FDB so that its remaining units can be sold for the benefit of the Debtor's legitimate creditors, and a post-2013 accounting of its books can be performed.

Dated: New York, New York
     January 9, 2018

    ZEISLER PLLC

    By:    /s/ Aaron M. Zeisler
       Aaron M. Zeisler
       Meghan H. Sullivan
      *Proposed Special Litigation Counsel*
      *for Debtor Hans Futterman*
      750 Third Avenue, 9th Floor
      New York, NY 10017
      Tel: (212) 671-1921